Scribner, J.
On the 4th day of April, 1895, N. L. Hanson and William Weddell, as executors of the last will and testament of James Dunipace, deceased,filed their complaint in forcible detainer *446 against Charles H. Dennis, before one Abel Comstock, a Justice of the Peace in Plain township, Wood county,Ohio. The complaint reads as follows:
“To Abel Comstock, a Justice of the Peace in and for the township of Plain, county of Wood, and state of Ohio. The undersigned,N.L.Hanson and William Weddell,executors of the estate of James Dunipace,deceased,residents of the county of Wood, state of Ohio, do hereby make our complaint against Charles H. Dennis,of said county and state, for this: That the said Charles H. Dennis, has ever since the first day of April, 1895. and now does still unlawfully and forcibly detain from the undersigned, possession of the following premises, situate in the township of Perrysburg, in said county of Wood, and described as follows: All those parts of River Tracts numbered seventy and seventy-one, then and now in his possession, and being those parts of said River Tracts belonging to the estate of said decedent.
“The said Charles H, Dennis first entered upon said premises as the tenant of the said James Dunipace, deceased, and unoer a verbal lease with him, which lease expired on April 7th, 1893; and on March 30th, 1893, the undersigned duly served on said Dennis, as required by law, notice, in writing, to leave said premises on April 7th, 1893.
1-ü By consent of complainants said Dennis has been allowed to remain on said premises until April 1st, 1895,since which later date he has unlawfully and forcibly held possession of said premises.
“On the 19th day of February,1895,the undersigned again duly served upon the said Charles H. Dennis, as required by law, notice in writing to leave said premises by April 1st, 1895.
“The undersigned ask process of restitution.
“Dated this April 14th, 1895.” (Signed by the parties).
A summons was duly issued by the justice of the peace on this complaint, which was made returnable April 10th, 1895. Service of this summons was regularly made, and at the time fixed therein the parties appeared. A jury was demanded by the defendant,and the case was,by consent,continued until July 12th,1895,for trial. On that date the parties appeared *447 with witnesses and counsel, and thereupon trial was had before the justice and a jury Testimony was submitted ón both sides. At the close of the argument certain requests or instructions to the jury as to the rules of law governing the rights of the parties were made, which will be noticed further on.
The trial justice charged the jury very fully and particular as to the issues to be considered by them,and as to the rules of law applicable and which should determine the rights of the parties. He refused certain instructions requested by counsel for the defendant, and in his charge to the jury gave certain propositions which the defendant excepted to.
The verdict of the jury, which was rendered April 12th, 1895, was in favor of the defendants, and reads as follows:
“We the jury duly empanneled and sworn in the above entitled cause do find that the defendant is guilty in manner and form as the plaintiffs hath in their complaint set forth, and that the same and the matters therein stated, are true.”
The justice of the peace thereupon overruled a motion o£ the defendant for a new trial, and rendered a judgment of restitution in favor of the plaintiffs below, and also for costs and an order of restitution to issue.
A bill of exceptions embodying all of the testimony given at the trial and the charge of the court to the jury and the action of the court upon the several requests to charge, was duly allowed and filed, and constitutes a part of the record.
The motion for a new trial in its material parts is as follows:
“The defendant moves the court to set aside the verdict and grant him a new trial in this cause for the reasons : —
1. That said verdict is not sustained by the law, and is contrary thereto.
2. That said verdict is not sustained by the evidence, and is contrary thereto.
*448 3. That errors of the law occurred upon the trial which were prejudicial to the defendant, in the admission of evidence and the refusal to admit evidence against defendant’s objection, and in the charge of the justice to the jury, and in his refusal to charge as requested by defendant, and in other respects as shown by the record, all of which were excepted to by the defendant at the time.”
A petition in error to reverse the judgment of the justice of the peace was filed in the court of common pleas, and the judgment of the justice was affirmed.
The errors assigned are substantially those constituting the basis for the motion for a new trial.
1 he case is now before us upon a petition in error filed in this court by the defendant, by which he seeks to reverse the-judgment of the justice of the peace as well as that of the common pleas. The complaint filed in the forcible detainer' proceedings contains the following direct allegation as to-the agreement with the owner under which the defendant entered into possession of, 'and enjoyed the premises in-question : — ■
“The said Charles H. Dennis first entered upon said premises as the tenant of said James Dunipace,deceased, under a verbal lease with him, which lease expired on April' 7th, 1893, and on March 30th, 1893, the undersigned duly served on said Dennis, as required by law, notice in writing-to leave said premises on April 7th, 1893. By consent of complainants, said Dennis has been allowed to remain on said premises until April 1st, 1895, since which later date-he has unlawfully and forcibly held possession of said premises.”
It is proper, also, in this connection, to call attention to* the language contained in the notice given by the executors-to the defendant on March 2t9h, 1893; also to what they state id their notice given by them February 11th, 1895,
“Perrysbnrg, O., March 29th, 1893.
“To Charles H. Dennis, Perrysburg, Ohio. Sir: We wish you to leave the following premises now in your occu *449 nation, to-wit: That part of River Tracts numbered seventy and seventy-one in Wood county Ohio, occupied by you under your verbal lease from James Dunipace, deceased. Your compliance with the notice, by Apiil 7th, 1893, will present any legal measures being taken by us to obtain possession.”
Another notice reads thus:—
“Perrysburg, Ohio., February 11th, 1895. Mr. Chas. H. Dennis, Perrysburg, O. Dear Sir: We wish you to leave the following premises now in your occupation,to-wit: That part of River Tracts numbered seventy and seventy-one in Wood county, Ohio, occupied by you under verbal lease, originally with James Dunipace, deceased, and now with the undersigned. Your compliance with this notice by March 10th, 1895, will prevent any legal measures being taken by us to obtain possession. (Signed) N, L. Hanson, William Weddell.”
And again:
“Perrysburg, Ohio, Feby. 19th, 1895. To Ohas. H. Dennis. Sir: You having expressed a desire for more time in which to close up the season’s operations on the farm, take notice that we wish you to leave the following premises now in your occupation, to-wit: That part of River Tracts numbered seventy and seventy-one in Wood county, Ohio, occupied by you under verbal lease, formerly with James Dunipace, now deceased, and more recently with the undersigned. Your compliance with this notice by April 1st, 1895, will prevent any legal measures being taken by us to obtain possession.
“Respectfully yours, “William Weddell, N. L. Hanson.”
The testimony of the defendant relating to the terms of his occupancy is contained in the record,and is as follows:- — -
“I had a conversation with N.L. Hanson in the spring of 1893, soon after the death of Mr. Dunipace, in which he asked me what the agreement was under which I occupied the farm, and I told him that Mr. Dunipace and I had agreed that I should occupy the farm for five years from the timo I went into possession of it, and if it was satisfactory to both of us at the end of that time, I was to have if *450 for two years more. I also told bim that I was to have one-half of the crop, and I was to deliver the other half in the market for Mr Dunipace as his share, but I was to be paid for hauling the same to market. And I told him I went into possession of the farm on the 7th day of April, 1892, and that my five years began on that day. Mr. Hanson said the executors could not recognize a lease for that time unless it was in writing. I told him that this lease was not in writing. Soon after that, that is on the last of March, 1893, I received from Mr. Hanson a letter, dated March 30th, 1893, — the paper which is here shown me marked Exhibit“E” — and enclosed with it a notice for me to quit the premises. (Exhibit11 A. ”) The papers which jou have shown me — Exhibits “E” and “A” — are the letter and notice referred to. A few days after this Mr. Hanson and Mr. Weddell came out to the farm and asked me if I was going to stay on the place, I said to, them that I did not care whether I stayed or not. They said you had better stay and continue right along as you have been doing. And afterward, in August, 1893, I called upon Mr. Hanson when he was picking plums in his garden, and asked him if he wanted the place, and said, ‘if you do, I will give you the place next spring;’ and Mr. Hanson said ‘we had a little trouble in the spring, but I had forgotten all about that; you go on and run the place just as you have been, and that will be satisfactory.’ Nothing more was said about it, and no objection to my staying was made by either Mr. Wedd'ell or Mr. Hanson until Mr. Hanson served the notice on me to quit, which was on the 11th day of February, of this year. That notice was to quit on the 10th day of March, 1895. The paper which you show me,Exhibit “B, ”is the notice to which I refer. Between the 7th of April, 1893, and the 11th of February, 1895, both Hanson and Weddell were on the place a good many times,and neither of them either said anything about my leaving,or made any complaint about my staying, or about the way I was running things. I have always claimed to them that I was occupying under my verbal lease from James Dunipace, deceased. I claim that I did not have any new lease from them, and was not occupying under any new arrangement with them. I accounted to them for half the crop of the second year ending April 7th, 1894, *451 and delivered it to them, and I have kept a strict, account of the crop of this year, but I have not yet settled with them for all of that. I never refused to settle, but when Mr. Hanson came there on the 11th of February, I told him that I would settle, but I was not ready to do so that day, and then he handed me the notice of that date which he had brought with him and had in his pocket. I divided the wine in the cellar, putting the landlord’s share on one side and mine on the other, and I never touched theirs. My share of this wine made from the grapes on the place is about 800 gallons, and it is worth fifty cents agallón- — I have been selling it for that.”
It clearly appears from the record that the defendant entered into possession of the 'premises in question about the 7th of April, 1892, under and by virtue of the verbal lease entered into with -Tames Dunipace, and that by the terms of this verbal lease it was agreed that the defendant should' occupy the said premises for the full term of five years, and by virtue of said lease he did so occupy and enjoy them down to the date of the commencement of this action in forcible detainer.
Under this state of facts, what were, and are, the rights of the respective parties in and to the possession and enjoyment of said premises? It was claimed in behalf of defendant that under the foregoing state of'facts the lessee became the tenant from year to year during the entire term of five years, and that the landlord could not put an end to the tenancy without giving him six months’ notice to quit, and that such notice must be to quit at the end of some certain year of such term occurring six months after the giving of such notice.
Counsel for plaintiffs claiming that the defendant was a mere tenant at will. The court refused to give this request of the defendant, and among other things, instructed the jury as follows:
‘"The defendant claims to hold and occupy the premises by virtue of the lease made during the lifetime of Mr. Duni *452 pace. It is conceded by all parties that the lease the de-' fendant claims to hold under, is a verbal lease, and is a lease for five years. A lease of that kind is void. It does not convey anything no entitle him to expect to derive any benefit from it. Now,real estate can be conveyed by a verbal agreement and part performance where something has been done in pursuance of and in carrying out the contract; that takes it out of the statute of frauds, and the contract is under such circumstances enforcible. Supposing in this case that Mr. Dunipace had verbally agreed with the defendant that he would rent him the premises for five years. Now, the defendant goes away, and then comes back to take possession of the premises by virtue of that agreement. Mr. Dunipace has changed his mind, and he says,!I have no wish to carry out the contract that was made between you and I,’ there would be no remedy in law for Mr. Dennis whereby he could recover possession of the premises. The defendant might have a right of action perhaps against Mr. Dunipace for damages; a suit for damages might be sustained, but under the law he could in no way compel the owner of the premises to comply with this verbal contract."
It is clear from that portion of the charge that the justice is stating a hypothetical and argumentative case by way of illustration of the doctrine that he lays down to the jury,that such a contract is void and cannot be enforced under the statute, can not be taken out of the statute. Well, now it was upon this state of facts, and upon the instruction given by the justice, that the verdict of the jury, finding that the complaint of the executors — plaintiffs—was true, was returned. I may remind the. parties once more that according to the complaint filed with the justice cf the peace upon which this trial was had,that the defendant,Dennis, entered upon said premises as the tenant of James Dunipace, under a verbal lease, which lease expired of April 7th, 1893, and that according to the record,the notice served by the plaim tiff3 upon the defendant, it was expressly averred in each ■ of the notices that were given, that the defendant had entered into the possession and occupancy of the premises *453 in controversy under a verbal lease with the owner, James Dunipace, deceased. It is clearly established by the record, and it is not questioned in the case, but what this defendant who entered upon these premises under this verbal lease,entered into the possession of the land in question here, — occupied it for a fixed term of five years — occupied and enjoyed the premises down to the commencement of this action, and, for aught that appears here, is still in possession under that lease Well, waiving the question argued by counsel to the jury on the trial as to whether such a lease, being in parol and not executed according to the formalities prescribed by law, created a tenancy from year to year, or a tenancy at will, let us come directly to what, as appears to us, is the material thing, whether or not here is a contract for the enjoyment of an interest in real estate for a fixed term under which possession was given by the owner,' — taken and enjoyed by the tenant under such circumstances as takes the case out of the statute of frauds, and protects the lessee against any attempt to evict him.
Now, in the case of Grant v. Ramsey, 7th Ohio State Reports, p. 15, this question was fully considered and determined by the Supreme Court as we understand it.
In this case the question was very fully considered by all the members of the Court, and a very able opinion was delivered, which I propose to quote somewhat. I will first, however, read from the syllabus of the case, or so much of it as bears upon this question: — “A parol lease of lands for more than one year, but less than three, will, by the taking possession under it, and the payment of rent according of its terms, be withdrawn wholly from the operation of the statute of frauds. ”
This was an action brought to recover certain installments of rent which had accrued upon a parol lease of the lands. The syllabus goes on: “In such a case, the tenant cannot, by a voluntary abandonment of the premises during the *454 term, terminate his further liability to pay rent, .although the landlord may have neglected to execute a written lease according to the agreement of the parties, unless the abandonment appears to have been on account of such neglect.” Coming now to the opinion of the court at page 164: “We proceed then to the consideration of the secondjjuestion .- Was the contract, upon which the plaintiff in the court below brought suit, void by the-statute of frauds? Or,|beirig a parol contract of lease for more than one year, and less than three, would it be taken out of the statute of frauds^by part performance?” The Court then reads the'[statute, and proceeds:
“The plaintiff in error claims that the contract in this case, being by parol, was void, first, because it was for an interest in lands; and secondly, because it was not to be performed within a year. It is admitted that the contract was not in writing; the term is shown by the former recovery to have commenced-December 12th, 1853, and extended until April 1st, 1855, (more than one year;) it is admitted that the lessee went into possession of the leased premises under the lease, and enjoyed them for several months, paying rent according to the contract, as the installments fell due. Under these circumstances, had the lease been only for one year, would it still have been void under the clause of the statute relating to leases and interests in lands? If void as to one party, it must have been equally so as to the other. If it would have bound the lessor so that he could not at pleasure eject the tenant, it must have also bound the lessee for the payment of rent.
“We suppose it to be no longer questionable in this state, that a parol lease for one year, where the tenant is put into possession, is valid, notwithstanding the terms of the statute. In Wilber v. Paine, 1 Ohio Rep. p. 251, where a parol contract was made to clear and fence a lot of ground, the party so clearing and fencing to have the privilege of raising a crop of corn on the premises,the landlord entered and gathered a crop. The assignee of the tenant brought trespass, and a question was made as to whether the contract was within the statute of frauds. The court held that it was *455 taken ont of the statute by part performance. They say: ‘It has been frequently held on the circuit that the delivery and possession on a parol agreement was sufficient to take it out of the statute, and we see no reason to reverse the rule or to reject the principle upon which it is founded. When the existence of a contract is evidenced by a change of possession which must result from the joint act of the parties, the mischief intended to be remedied by the statute is scarcely to be apprehended. The fact as far as it goes,is as satisfactory evidence of the existence of a contract as a memorandum in writing c juld be; and it may be added, that under such circumstances, to enforce the statute and leave the party who had been put into possession by virtue of an agreement, to be treated as a wrong-doer, would not only be repugnant to justice, but would make the statute a shield and protection for injustice.5 We have decided that a parol lease of a farm for one year, after the lessee had been putin possession, was valid,and that the tenant might defend his possession against his landlord as well as against a stranger. ’ ’
Further on, on page 169, the judge proceeds:-—
“But we have found no case in which it has been held that where a contract for an estate or interest in lands is by part performance taken out of the provisions of the statute of frauds which relates in express terms to real con tracts, it may still be held void as within the provisions of the same statute which relates to agreements not to be performed within a year. Lands are usually sold by contracts which are not to be fully performed within one year, and such we apprehend has been the character of most of the real contracts which have been held by courts to be taken out of the statute by part performance. But if it is necessary from considerations of equity, and in order to suppress fraud-, that courts should hold parol contracts for real estate, which may • be fully performed within one year, to be taken out of the statute by a change of possession and the making of improvements upon the premises, these considerations lose none of their force where the parties have acted still longer on the faith of the contract, and improvements have been continuously made for years.”
*456 In a case reported in the 8th Ohio State Rep. p. 257 Richardson v. Bates an action had been brought upon a land contract for the lease of land for a period of five years.The lease had not been executed according to the requirements of the statute. The court held there that an action to recover the stipulated rent could not be maintained. And in the course of the opinion delivered in that case, Judge Sutliff says this: — -
“The record shows that the plaintiff by his petition predicated his rights to recover solely upon the indenture set forth in his petition. ' He did not aver a part per-’ formance, and ask to have the instrument reformed and then enforced. Nor does his petition state a delivery of possession by the plaintiff, and occupancy by the defendants; but the right of action is placed solely upon the obligations imposed upon the defendants by the instrument set forth.”
In this proceeding, in the complaint filed with the justice of the peace, it is averred distinctly, and the record shows that the parties were proceeding on the assumption that that was true; that the tenant entered into the possession of the premises and was holding them under a verbal lease entered into by the owner and the lessee; and it appears in the record that the lessee had not only entered and occupied under the rental agreement which had been entered into, but he had cultivated and paid rents; that he had conducted himself in all respects as a man might be expected to conduct himself who had entered and was in possession of the premises under a lease with the owner.
Well now, under this state of facts it appears to us that he was entitled to be protected in his possession of these premises. That the owner,or the executors, had no right to interfere and evict him from the possession and enjoyment of the premises which he had entered' upon under the parol contract; that the doctrine of the Court in the case of Grant v. Ramsey, as laid down and as suggested in the case of Richardson v. Bates, is applicable here,and that under that doctrine the defendant was entitled to be protected against *457 an action brought to evict him from the possession of the premises. In this case of Richardson v. Bates, the Judge says that the plaintiff in his petition predicated his right to recover solely upon the indenture set forth in his petition. He did not aver a part performance, and ask to have the instrument reformed, and then enforced. Nor does the petition state a delivery of possession by the plaintiff, or an occupancy of the defendants.
Jason Barber & R. S. Parker, for Plaintiff in Error.
Troup & Dunn, D. K. Hollenbeck, for Defendants in Error.
There is a question arising in this case of importance, and it may be proper to consider it. The action of these executors was based entirely upon the statute allowing proceedings in forcible entry and detainer. As in the case of Richardson v. Bates,the lessee did not undertake to set out byau independent proceeding in a court possessed of general equity jurisdiction of the facts,the execution of the contract and taking possession under it, and ask for specific relief and for the reformation of the contract; but he defended himself upon the facts as they appeared upon the complaint of the plaintiff, and upon the testimony submitted, We think he was entitled to protect himself against a proceeding for eviction; a proceeding by which it is sought to oust him, under facts which the executors themselves have set out in their complaint,and upon which they base their right to disturb him in his possession of the premises.
In conclusion, and upon the whole, it is the judgment of this court that the court of common pleas eired in affirming the judgment of the justice of the peace, and it is ordered that the judgment of the common pleas court be-reversed,and,as there is some doubt as to the power and right of this court to reverse the judgment of a justice of the peace, the case is remanded to the common pleas court with instructions to enter such judgment as it should have entered, a judgment of reversal of the judgment of the justice of the peace, and.a dismissal of the proceeding, with costs.